UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


HOWARD FUCHS, ) CASE NO. 4:08 CV1932
)
    Plaintiff, ) JUDGE PETER C. ECONOMUS
)
v. )
) MEMORANDUM OF OPINION
) AND ORDER
FEDERAL BUREAU OF PRISONS, et al., )
)
    Defendants. )


On August 11, 2008, pro se plaintiff Howard Fuchs filed the above-captioned action against the Federal Bureau of Prisons, T.R. Sniezek, J.T. Shartle, John Doe 1, John Doe 2 and John Doe 3. Mr. Fuchs, who is incarcerated at the Federal Correctional Institute in Elkton, Ohio (F.C.I. Elkton), Ohio, brings this Bivens action pursuant to 28 U.S.C. §§1331, 1343 and 1346(a).[1] Asserting violations of his rights under the First, Fifth and Eighth Amendments, Mr. Fuchs contends that the defendants have failed to meet their duty to provide "safekeeping, care and substance of all persons charged with . . . offenses against the United States." (Pet. at 1.) He seeks an order from this

---

[1] An action filed under the Bivens doctrine asserts an injury of a plaintiff's constitutional rights by federal employees. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971

court prohibiting F.C.I. Elkton from housing three men in a two man cell, declaring that his constitutional rights were violated by defendants' actions, and directing defendants to permit inmates in the segregation unit to attend religious services in a timely manner. In his prayer for relief, Mr. Fuchs asks the court for collective damages in the amount of $2,000,000.00, as well as punitive damages against each defendant.

*Background*

On April 24, 2007, Mr. Fuchs attempted to self-surrender to F.C.I. Elkton. At that time he claims he was told there was "no room" and to return on Friday, April 27, 2007. He then walked two miles to a telephone to advise his parole officer, Kevin Gilliland. Mr. Gilliland apparently promised to investigate the matter because plaintiff states his parole officer called him back to explain that F.C.I. Elkton "made a mistake" and to return to the prison immediately.

Mr. Fuchs returned to F.C.I. Elkton on Tuesday, April 24, 2007. He was then strip-searched, placed in the segregated housing unit and assigned to a two-man disciplinary cell. Because two inmates already occupied the cell, plaintiff was given a mat upon which to sleep. He complains that the mat was near the toilet in the room. There is no indication how long plaintiff was housed under this arrangements.

Without explaining the causal connection or policy, plaintiff states "[a]s a result, Plaintiff was unable to exercise Plaintiff's First Amendment Right to attend Jewish Services on Fridays and Saturdays." (Pet. at 4.) Claiming that he did complain to prison personnel, after 12 days, he did receive "the Common Fare religious diet. Plaintiff received no commissary, envelopes, paper or stamps for the first ten days." (Pet. at 4.)

On May 25, 2007, it was determined by F.C.I. Elkton's medical staff that plaintiff

contracted "Methocillin [sic] Resistant Styphyloccus [sic]Aurea (MRSA)."[2] He believes that the infection was caused by "being housed in the unsanitary cell sleeping on a mat placed on the floor next to the toilet . . . since Plaintiff never had MRSA staph before entering the segregated housing unit." (Pet. at 5.)

*Analysis*

Mr. Fuchs argues that the defendants have violated his First, Fifth and Eighth Amendment rights. Specifically, he alleges that his placement in a segregated housing unit violated the Due Process Clause of the Fifth Amendment. He asserts his Eighth Amendment right to be free from cruel and unusual punishment was violated when he contracted MRSA after sleeping on a mat on the floor. And, finally, his First Amendment right to free exercise of religion was allegedly violated when he was "denied Jewish Services on Fridays and Saturdays and deprived Religious Diet for 12 days." (Pet. at 2.)

---

[2]The court believes this is a reference to methicillin-resistant Staphylococcus aureus. The Centers for Disease Control (CDC) describes MRSA as:

> a potentially dangerous type of staph bacteria that is resistant to certain antibiotics and may cause skin and other infections. As with all regular staph infections, recognizing the signs and receiving treatment for MRSA skin infections in the early stages reduces the chances of the infection becoming severe. MRSA is spread by:
>
> - Having direct contact with another person's infection
> - Sharing personal items, such as towels or razors, that have touched infected skin
> - Touching surfaces or items, such as used bandages, contaminated with MRSA

http://www.cdc.gov/mrsa/mrsa_initiative/skin_infection/mrsa_faqs.html

3

Mr. Fuchs maintains that former F.C.I. Elkton Warden T. R. Sniezek, John Doe 1, John Doe 2, and John Doe 3 were "negligent and deliberately different . . . when he was placed into the segregation housing unit when Plaintiff self-surrendered on April 24, 2007." (Pet. at 4.) Citing Hewitt v. Helms, 459 U.S. 460 (1983), Mr. Fuchs argues that an inmate can only be placed in segregation if there is a "need to control the threat of a serious disturbance." He maintains that, absent these circumstances, there is no reason to place an inmate in administrative segregation.

Quoting the United States Supreme Court, Mr. Fuchs asserts that the Eighth Amendment protects an individual if unsafe conditions "'pose an unreasonable risk of serious damage to [a prisoner's] future health.'" Helling v. McKinney, 509 U.S. 25, 34 (1993). He cites several examples like tobacco smoke, unsafe drinking water, and exposed wiring as instances where it has been determined that a party was exposed to undue risk in violation of the Eighth Amendment. The presumption here is that the defendants' decision to house Mr. Fuchs in a room with a mat on which to sleep was an exposure to undue risk.

Mr. Fuchs's First Amendment argument is premised on his claim that he was denied the opportunity to freely practice his religious beliefs. This alleged infringement presumably resulted from him not being able to attend services or eat a Common Fare diet for 12 days. He claims he has no other adequate remedy at law to "redress the wrongs described herein." (Pet. at 7.)

*Standard of Review*

A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks

monetary relief from a defendant who is immune from such relief.³ 28 U.S.C. §1915A; Onapolis v. Lamanna, 70 F.Supp.2d 809 (N.D.Ohio 1999)(if prisoner's civil rights complaint fails to pass muster under screening process of Prison Litigation Reform Act (PLRA), district court should sua sponte dismiss complaint); see Siller v. Dean, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000); see Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); In re Bendectin Litig., 857 F.2d 290, 300 (6th Cir.1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims).

*Civil Rights Claims*

The court construes this action as a Bivens claim because Mr. Fuchs essentially alleges he was deprived of a rights secured by the federal Constitution by persons acting under color of federal law. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971). The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires state and federal prisoners bringing actions concerning prison conditions to exhaust all available

---

³The relevant statute provides:

> The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. . . .
>
> > (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> >
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted

28 U.S.C. §1915A(b)(1).

5

administrative remedies before suing in federal court. Mr. Fuchs claims he has fully exhausted his administrative remedies.

*Eighth Amendment*

There are two requirements a prisoner must satisfy if he is raising an Eighth Amendment claim challenging prison conditions. The first is an objective requirement-"the deprivation alleged must be, objectively, 'sufficiently serious'" which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). To meet the objective component, prison conditions are sufficiently serious and violate Eighth Amendment rights only in those cases where a prisoner is deprived of the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 349, (1981). Thus, prison officials are under a duty to "provide humane conditions of confinement." Farmer, 511 U.S. at 832.

The second requirement is a subjective one-"a prison official must have a 'sufficiently culpable state of mind,'"one that is defined as "deliberate indifference." Id. at 834. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

There is no suggestion that these allegedly unpleasant sanitary conditions were intentionally created by the defendants. Mr. Fuchs was advised at the time he reported to F.C.I. Elkton that space would be at a premium until April 27, 2008. This suggests that plaintiff was sleeping on the mat on the floor for three days. While that is not a comfortable sleeping

arrangement, see Johnson v. Pelker, 891 F.2d 136, 138-39 (7th Cir. 1989)(being required to sleep on cold, hard metal surface for two days does not amount to an Eighth Amendment violation), the focus of his Constitutional claim is on the substantial risk it imposes. There are no facts in the complaint which suggest that the mat on which he slept or the conditions in the cell were so filthy that they posed a substantial risk to his health. The fact that the plaintiff had to sleep on a mat on the floor, does not per se constitute a substantial risk of harm. Moreover, while the toilet is clearly in room, the diagram provided by the plaintiff indicates that the mat on which he slept was next to both the shower and toilet. There is no indication, however, that his body was in contact with the floor or that the conditions in the cell were so substandard that even the protection of a floor mat could not reasonably assure that plaintiff would not be in "substantial risk of serious harm."

With regard to his medical care, Mr. Fuchs does not allege a constitutional violation. To allege a proper Eighth Amendment claim on the basis of deliberate indifference to a serious medical need claim, a prisoner must allege both a serious medical need and demonstrate the official had a sufficiently culpable mind, i.e., the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. While plaintiff has alleged he contracted a staph infection from sleeping on a mat in a three man cell, he does not allege "[inadequate] medical treatment," or demonstrate jail personnel were deliberately indifferent once they determined he had an infection. Thus, while plaintiff may have some state tort claim, he has alleged neither a serious medical need nor a sufficiently culpable mind on the part of the jail personnel to satisfy an Eighth Amendment claim.

*Due Process*

Mr. Fuchs alleges that his confinement in segregation violated his right to Due

Process. His placement in segregation in and of itself does not, however, invoke a liberty interest protected by the Constitution. Bills v. Henderson, 631 F.2d 1287 (6th Cir.1980). The federal Constitution, standing alone, does not confer upon prisoners a "liberty interest" in any particular form of confinement. See Hewitt, 459 U.S. at 467-68. Therefore, any liberty interest that Mr. Fuchs may have had in not being segregated upon surrender without the benefit of a hearing must have derived from Ohio statutes, rules, or regulations. See Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir.1985)("Any interest ... inmates have in not being placed in administrative segregation must be drawn from state law.") Inasmuch as he is not asserting a liberty interest as a function of state law, Mr. Fuchs has failed to allege he is entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process clause to insure that the state-created right is not arbitrarily abrogated." Wolff v. McDonnell, 418 U.S. 539, 557(1974).

*First Amendment*

The Supreme Court has instructed that when an action of prison officials impinges on an inmate's constitutional rights, the action or regulation is valid only if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987). The first factor the court must consider is whether there is a valid, rational connection between the prison action or regulation and the legitimate governmental interest put forward to justify it. Id. at 89-90. A prisoner's right to practice his religion is subject to prison policies and regulations that are "reasonably related to legitimate penological interests." Id. at 89; accord Spies v. Voinovich, 173 F.3d 398, 403 (6th Cir.1999). Courts generally accord great deference to prison officials' adoption and execution of policies, regulations, and practices relating to the preservation of internal order, discipline, and security within the prison environment. Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989); Turner,

482 U.S. at 85; Walker, 771 F.2d at 929-30. The Supreme Court has even held that requiring inmates to work on Fridays and miss religious services is rationally related to the legitimate rehabilitative concern of simulating working conditions in society. O'Lone v. Estate of Shabazz, 482 U.S. 342, 351 (1987)

Mr. Fuchs's right to exercise his right practice his religion was not summarily denied or compromised based on prison policy. By his own admission, plaintiff's opportunity to attend religious services was delayed for 12 days, not denied. Plaintiff does not identify a single rule, policy or regulation which suggests the defendants attempted to infringe on his right to exercise his religious beliefs. Inasmuch as he is now free to attend religious services and eat a meal of his choice, plaintiff is no longer suffering an injury; thus, his claim is moot.

Based on the foregoing, this action is dismissed. Further, the court CERTIFIES pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

S/Peter C. Economus - 11/10/08
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE